FILED

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

2017 FEB 21 PM 1:55

**Lloyd R. James**

**Plaintiff,**

**CASE NO:**
8:17cv415T30 AAS

**Vs**

**JURY DEMAND**

**FLORIDA DEPARTMENT OF EQUAL OPPORTUNITY**

**Defendant(s).**
_______________________________/

**ORIGINAL COMPLAINT**

**COMES NOW, the Plaintiff, Lloyd R. James (Plaintiff), by and through his undersigned counsel, and files this original complaint against the FLORIDA DEPARTMENT OF EQUAL OPPORTUNITY ("the State") and alleges:**

**A. Jurisdictional Statement**

1. **The U.S. District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.**

2. **That the federal question involved in this case arises under Title VII of the Civil Rights Act of 1964.**

3. **That the Plaintiff is residents of Kissimmee, Florida. He is black/African American.**

4. **That the Defendant is a subdivision of the State of Florida, with its principle office in Tallahassee, Florida and with satellite offices throughout the State of Florida.**

5. **The Plaintiffs filed Charge of Discrimination at the U.S. Equal Employment Opportunity Commission ("EEOC") on July 28, 2016.**

6. **The EEOC issued a Notice of Suit Rights letter on November 23, 2016. Exhibit A.**

TPA-41943 $400

## STATEMENT OF FACTS

7. Lloyd R. James is a black male of Jamaican national origin. He is also a U.S. military veteran and former enlistee in the United States Marines.

8. The Defendant hired Mr. James for the position of Customer Service Representative on September 3, 2000.

9. As a Customer Service Representative, Mr. James provided support and social services to displaced and distressed veterans of the U.S. Armed Forces.

10. Some time between calendars years 2012 and 2014, Mr. James was accused of sexual harassment of a female co-worker. He was subjected to an investigation, and the results of the said investigation exonerated Mr. James of any wrong-doing.

11. Some time between 2014 and 2015, Mr. James' supervisor was changed to Naomi Resario, who is a Hispanic female. Soon thereafter, Ms. Resario suspected that Mr. James was, in fact, guilty of having committed sexual harassment upon the female co-workers, who is referenced above in averment #10. Ms. Resario commenced forewarning other female workers to beware of Mr. James' behavior and propensities because, in her opinion, Mr. James was, in fact, a sexual harasser. When confronted with her viewpoints regarding Mr. James' general character and propensities for harassing women, Ms. Resario commented, "we want to make sure he did not do it again."

12. Some time after 2014, new Hispanic female employees were hired into Mr. James' department. Ms. Resario commenced dissuading these employees from having professional, office relationships with Mr. James. As a consequence, Ms. Resario caused the entire office staff

and team members to ostracize and isolate Mr. James.

13. Some time after 2014 and the workplace ostracism referenced above in averment #12, Ms. Resario moved her cubicle from the back of the office to a location next to Mr. James' cubical. She then closely and daily monitored Mr. James. She then sent daily or weekly complaints regarding Mr. James' activities to the Center Manager (Ms. Burgos, a Hispanic female).

14. Mr. James then complained to the Center Manager (Ms. Burgos) about Ms. Resario's harassment. Mr. James complained that he was being stereotyped as a black-male/ Jamiacan who sexually harasses females and that he was being ostracized by everyone else in the office. However, Ms. Burgos took no corrective action.

15. Mr. James also suffered from co-worker harassment. Sometime between 2014 and 2015, Miguel Balbas, a Hispanic male, followed supervisor Resario's lead in spreading rumors about Mr. James' alleged sexually-harassing propensities and encouraging all of the female co-workers to disassociate with Mr. James. To that end, in his Charge of Discrimination to the U.S. Equal Employment Opportunity Commission, Mr. James alleged that "Mr. Balbas went on to defaming my name and character to at least 2 new female co-workers, by informing them that I was a sexual harasser or words to that effect. The harm it caused was that the 2 young ladies started to avoid me and stop talking to me; the job required us to work together as a team."

16. As a result of Mr. Balbas' actions, referenced above in averment #15, Mr. James filed written complaints to the Defendant's management staff, including: Ms. Burgos and Mr. Joseph Patton, Veterans Program Manager. However, both Ms. Burgos and Mr. Patton told Mr. James that he should not have reduced his concerns to "writing" and that in the future Mr. James should

submit verbal complaints and attempt to resolve his concerns with front-line supervisors.

17. Some time between January 2013 and August 2, 2015, Mr. James perceived that instead of taking corrective action against Mr. Miguel Balbas, the Veterans Program Director (Joseph Patton) retaliated against Mr. James, who was the victim of Balbas' harassment. Mr. James filed a retaliation and "conspiracy" grievance against Mr. Patton, Ms. Rosario, Ms. Burgos, and Mr. Balbas. In substance, Mr. James alleged that the aforementioned persons acted in concert to discriminate against him and to deny equal employment opportunity.

18. After Mr. James complained against Mr. Patton, his workload substantially increased and new errors were located and pointed out on a daily basis. These errors were non-existent or frivolous, and were fabricated to create a "file" on Mr. James, and to set him up for termination.

19. Some time between March 20, 2015 and June 30, 2015, Mr. James was placed on Performance Improvement Plan (PIP), as a result of the errors mentioned in averment # 18. Mr. James was not given a fair chance to succeed while on the Performance Improvement Plan (PIP). On July 17, 2015, Mr. Patton informed Mr. James that he had performed poorly on the PIP, and on August 3, 2015, Mr. Patton terminated Mr. James' employment.

**COUNT I. (Title VII of the 1964 Civil Rights Act)**
**Hostile Work Environment- Gender**

20. The Plaintiff hereby reasserts and restates paragraphs 1 through 20.

21. The Plaintiff is a male. He was accused of sexual harassment during his employment with the Defendant, but he was completely exonerated. Nevertheless, the Defendant's supervisors and co-workers labeled the Plaintiff as a "sexual predator" and ostracized him from professional and work relations and relationships. Newer co-workers were encouraged to disassociate with the

Plaintiff.

22. The Plaintiff's ostracism was daily and frequent, and sex-based. This harassment was severe in that the Plaintiff was labeled with a personal trait that is odious, embarrassing, and designed to sexually stereo-type him as being sexually-deviant. This harassment was also pervasive in that it occurred on a daily basis, had a negative psychological impact upon the Plaintiff, and created a general break-down in his relations with co-workers and management.

23. The Defendant knew about this sex-based harassment, because the Plaintiff reported this sex-based harassment to management. However, management took no action. Instead, management placed the Plaintiff on a Performance Improvement Plan (PIP) and, subsequently, terminated him.

24. The Defendant's sex-based harassment culminated in the above-stated PIP and termination.

25. The Defendant's sex-based harassment resulted in severe or serious disabling emotional distress and psychological damage in the Plaintiff.

26. WHEREFORE, the Plaintiffs demand:

A. Trial by jury.

B. Judgment against the Defendants for compensatory and punitive damages.

C. Affirmative Action, as deemed appropriate by the Court.

D. Injunctive Relief, as deemed appropriate by the Court.

E. Attorney's fees and costs.

F. For whatever additional relief as is deemed just and appropriate by this honorable Court.

**COUNT II. (Title VII of the 1964 Civil Rights Act)**
**Hostile Work Environment- National Origin**

27. The Plaintiff hereby reasserts and restates paragraphs 1 through 20.

28. The Plaintiff is a male. He was accused of sexual harassment during his employment with the Defendant, but he was completely exonerated. Nevertheless, the Defendant's supervisors and co-workers labeled the Plaintiff as a "sexual predator" and distinguished him a "Jamaican" and not like African Americans born in the United States; and they ostracized him from professional and work relations and relationships. Newer co-workers were encouraged to disassociate with the Plaintiff.

29. The Plaintiff's ostracism was daily and frequent, and National Origin-based. This harassment was severe in that the Plaintiff was labeled with a personal trait that is odious, embarrassing, and designed to sexually stereo-type him as being sexually-deviant black and Jamaican male. This harassment was also pervasive in that it occurred on a daily basis, had a negative psychological impact upon the Plaintiff, and created a general break-down in his relations with co-workers and management.

30. The Defendant knew about this National Origin-based harassment, because the Plaintiff reported this said harassment to management. However, management took no action. Instead, management placed the Plaintiff on a Performance Improvement Plan (PIP) and, subsequently, terminated him.

31. The Defendant's National Origin-based harassment culminated in the above-stated PIP and termination.

32. The Defendant's National Origin-based harassment resulted in severe or serious disabling emotional distress and psychological damage in the Plaintiff.

33. WHEREFORE, the Plaintiffs demand:

A. Trial by jury.

B. Judgment against the Defendants for compensatory and punitive damages.

C. Affirmative Action, as deemed appropriate by the Court.

D. Injunctive Relief, as deemed appropriate by the Court.

E. Attorney's fees and costs.

F. For whatever additional relief as is deemed just and appropriate by this honorable Court.

**COUNT III. (Title VII of the 1964 Civil Rights Act)**
**"Retaliation"**

34. The Plaintiffs hereby reasserts and restates paragraphs 1 through 20.

35. The Plaintiff engaged in a series of protected activities when he repeatedly complained of sex-based and National-origin based harassment to his supervisors and managers. The nature of these complaints was that the Plaintiff was subjected to a series of on-going harassing actions which commenced in 2013 and continued on through his termination in 2015.

36. The Defendant subjected the Plaintiff to an adverse employment action in the form of "retaliatory harassment," as stated averments 1 through 33.

37. The Defendant also subjected the Plaintiff to an adverse employment action when it terminated him in August 2015.

38. The Plaintiff's termination and retaliatory harassment was a proximate result of his protected activities. But for the Plaintiff's protected activities, he would not have been terminated. The Plaintiff has a successful performer fully from 2000 through 2014; then, suddenly, he was placed on a PIP in March 2015, subject to continuing retaliatory harassment;

and then terminated in August 2015.

39. WHEREFORE, the Plaintiffs demand:

A. Trial by jury.

B. Judgment against the Defendants for compensatory and punitive damages.

C. Affirmative Action, as deemed appropriate by the Court.

D. Injunctive Relief, as deemed appropriate by the Court.

E. Attorney's fees and costs.

F. For whatever additional relief as is deemed just and appropriate by this honorable Court.

RESPECTFULLY SUBMITTED:

/s/ Roderick O. Ford

Roderick O. Ford, Esq.
FBN: 0072620
RODERICK O FORD PLLC
220 E. Madison Street
Suite 1205
Tampa, Florida 33602
(813) 223-1200
(800) 792-2241 facsimile
laboradvocate@fordlawfirm.org